DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

BENJAMIN KINGSLEY (CABN 314192)
Assistant United States Attorney

>   450 Golden Gate Avenue, Box 36055
>   San Francisco, California 94102-3495
>   Telephone: (415) 436-6937
>   FAX: (415) 436-7234
>   benjamin.kingsley@usdoj.gov

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 18-009 WHA<br>CR 19-127 WHA |
| Plaintiff, | |
| v. | **UNITED STATES'**<br>**SENTENCING MEMORANDUM** |
| AMIR BAKHTIARI, | Sentencing Date: October 29, 2019<br>Sentencing Time: 2:00 p.m. |
| Defendant. | |

### INTRODUCTION

On March 19, 2019, defendant pleaded guilty to Count Two of the Indictment in CR 18-009, charging him with wire fraud, and the single count of the Information in CR 19-127, charging him with filing a false tax return. That same day, the parties entered into a plea agreement pursuant to Rule 11(c)(1)(B). Dkt. 86. In the plea agreement, the parties agreed to a Sentencing Guidelines Offense Level of 27. Dkt. 86 at 7. The parties reached no agreement regarding defendant's criminal history category.

U.S. Probation has recommended that Bakhtiari is an Offense Level of 27 and is in Criminal History Category I, resulting in a Guidelines range of 70 to 87 months of imprisonment. Probation recommends a variance to a sentence of 60 months, supervised release, restitution, forfeiture, and no

SENTENCING MEMORANDUM

fine.

The government recommends a low-end Guidelines sentence of 70 months of imprisonment, followed by three years of supervised release. The government also recommends restitution, forfeiture, and no fine.

**DISCUSSION**

**A.    Offense Conduct**

From 2009 to 2016, Bakhtiari managed two auto dealerships owned by Sonnen Motorcars ("Sonnen")—Audi Marin and Sonnen Volkswagen. PSR ¶ 8. Bakhtiari took advantage of this position and embezzled over $6.5 million from the dealerships over the seven years he had control, through a complicated fake advertising vendor scheme and through the issuance of unauthorized bonuses. PSR ¶¶ 12–13.

For the fake vendor part of his scheme, Bakhtiari caused his friends (including co-defendant Austin Caba) to create shell companies with names suggesting that the entities were in the business of advertising. PSR ¶ 9. These companies were Advision Advertisers, Elite Marketing and Advertising, Pacific Blue Advertising, and ARC Sierra Promotional & Incentive Co. PSR ¶ 9. None of these companies were actually in the business of advertising (or in any other business). PSR ¶ 9. Instead, at Bakhtiari's direction and under his control, they issued fake invoices to Sonnen Motorcars for advertising that was never done. PSR ¶ 9. These invoices were then approved by Bakhtiari. PSR ¶ 9. Each vendor then received payment, again for work that was never done, via checks that were typically approved by Bakhtiari and one of the controllers at Sonnen. PSR ¶¶ 9–10. The vendors were given the checks (sometimes by Bakhtiari directly), and then they deposited the checks in the company bank accounts. PSR ¶¶ 9, 11.

Bakhtiari allowed his friends who controlled the fake vendors to keep a percentage of the funds (in the range of 10% to 15%), and the remainder of the money flowed back to Bakhtiari's bank account or to a corporate AMEX card controlled by Caba. PSR ¶ 12. In total, over the relevant time period (and dating back to at least 2010), Bakhtiari embezzled $6,489,834 in this manner. PSR ¶ 12. The money was spent on a variety of things, including a Newport Beach home, expensive watches, jewelry, travel, trips to Las Vegas, gambling, cigars, art, and purchases at high-end retail stores. PSR ¶¶ 11–12.

//

**SENTENCING MEMORANDUM**            2

1    For the unauthorized bonus part of his scheme, Bakhtiari fraudulently initiated $67,698 for himself

2    in unauthorized bonuses (and approved a roughly similar amount for co-defendant Arlette Casino).  PSR

3    ¶ 13.  For some of these bonuses, he falsely claimed that he was sharing funds that he had earned as an

4    award from the Volkswagen and Audi corporate offices.  PSR ¶ 13.

5    Finally, for the tax years 2011 through 2016, Bakhtiari filed false tax returns that failed to report

6    income from the fraud schemes.  PSR ¶ 14.  The total amount of unreported income was approximately

7    $3.99 million, resulting in a tax loss to the IRS of $1,443,911.  PSR ¶ 14.

8    **B.    Defense Objections to the PSR**

9    Bakhtiari has two unresolved objections to the PSR.  First, he objects to the loss amount in the

10   PSR of $6,489,834.  As an initial matter, this objection does not affect the Guidelines level, as he agreed

11   to a floor of $4.3 million in loss in the plea agreement, Dkt. 86 at 5, which is above the Guidelines

12   threshold, and the parties agreed to the Guidelines, *id.* at 7.  Nonetheless, $6,489,834 is the correct number

13   and the objection should be overruled.  That amount is based on bank records showing transfers to the

14   four fake advertising entities from Sonnen Motorcars, as well as $117,000 of checks from Sonnen

15   Motorcars that were deposited by Caba in his legitimate espresso business account.  PSR ¶ 12.  These

16   transfers were entirely from Sonnen Motorcars to Bakhtiari's four fake companies or Caba's espresso

17   business, for advertising that never happened.  There is no basis for excluding any amount of those funds

18   from the loss amount.

19   Second, Bakhtiari objects to Sonnen Motorcars' claim for expenses related to the investigation and

20   prosecution of his conduct.  The government has been informed by counsel for Sonnen that it has

21   withdrawn that particular component of its restitution request, so this objection is now moot.

22   **C.    Guideline Calculations**

23   The government agrees with Probation's calculation of the Guidelines, which were agreed upon

24   by the parties in the plea agreement:

25   Wire Fraud—Group 1

26   a.    Base Offense Level, U.S.S.G. § 2B1.1:                                    7

27   b.    Loss > $3.5 million but < $9.5 million, U.S.S.G. § 2B1.1(b)(1)(J):      +18

28   c.    Aggravating Role, § 3B1.1(c):                                           +2

| | | |
|---|---|---|
| d. | Abuse of Trust, § 3B1.3: | +2 |
| e. | Wire Fraud Offense Level | 29 |

False Tax Return—Group 2

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. §§ 2T1.1, 2T4.1(H): | 20 |
| b. | Failure to report > $10,000 from criminal activity, U.S.S.G. § 2T1.1(b)(1): | +2 |
| c. | Adjusted Offense Level: | 22 |

Section 3 Modifications for Grouping and Acceptance of Responsibility

| | | |
|---|---|---|
| a. | Group 1 is equal to one unit (U.S.S.G. § 3D1.4(a)) | |
| b. | Group 2 is equal to ½ unit (5 to 8 levels less serious) (U.S.S.G. § 3D1.4(b)) | |
| c. | Total number of units is 1 and 1/2, so 1 level is added to Group 1 (U.S.S.G. § 3D1.4) | |
| d. | Grouped Offense Level: | 30 |
| e. | Acceptance of Responsibility, § 3E1.1 | -3 |
| f. | Total Adjusted Offense Level | 27 |

The total fraud loss amount, including both the fake advertising expenditures and the unauthorized bonuses, is $6,618,639.  PSR ¶ 15.  Bakhtiari was an organizer and leader, enlisting Casino and Caba in his criminal misconduct, PSR ¶¶ 8–12, and this warrants the +2 enhancement for an aggravating role.   He also abused his position of trust.  He was the senior manager at the two dealerships (below the owner), and used his considerable managerial discretion to further the offense (in approving invoices and checks, and in concealing the true nature of the payments).  PSR ¶¶ 8–10.

The total tax loss amount is $1,443,911.  PSR ¶ 14.  This loss arises from more than $10,000 in unreported criminally derived income.  PSR ¶ 14.

Given that Bakhtiari's Adjusted Offense Level is 27, and his Criminal History Category is I, his Guidelines range is 70 to 87 months of imprisonment.

//

//

//

//

SENTENCING MEMORANDUM           4

### D.     A Sentence of 70 Months Is Sufficient but Not Greater than Necessary to Comply with 18 U.S.C. § 3553(a)

#### 1.     Nature and Circumstances of the Offense

Defendant's fraud is egregious and justifies a lengthy prison sentence.  For approximately seven years (or 84 months, longer than the sentence requested by the government here), Bakhtiari defrauded his employer, a small to medium-sized business in the district, out of approximately $6.6 million.  He abused the substantial trust that his employer placed in him, taking advantage of his discretion and control over the business.  As he found he could get away with his fraud, he became more brazen, taking greater amounts of money over shorter periods of time, with losses peaking in the 2013 to 2016 time period, when Caba and Arc Sierra were brought into the scheme.

Bakhtiari's conduct was pathological.  To sustain his fraud, he lied repeatedly and directly to his employer and his employees about his advertising expenditures.  This was not a faceless embezzlement of the funds of a large organization, but face-to-face lies and deception told to those surrounding him every day.  He inveigled others into his scheme—including other employees, such as one of Sonnen's controllers, Arlette Casino, and one of his friends, Austin Caba, as well as other friends who were not charged as part of this case—manipulating or intimidating them into knowingly or unknowingly aiding him.  As explained in the Victim Impact Statement of P.S., one of the two owners of Sonnen Motorcars, Bakhtiari was "a tyrant" who "used fear and intimidation to make his subordinates do things that assisted him with his crimes."  VIS of P.S. at 8.

The financial records demonstrate that the crime was motivated by greed.  Bakhtiari was paid well over $300,000 in legitimate salary by Sonnen Motorcars.  That was not enough for him, so he stole more, at a rate of approximately $1 million per year.  Of the total loss amount, the vast majority went directly or indirectly to Bakhtiari or his family's benefit.  Caba's AMEX records, which reflect expenses Bakhtiari directed that Caba incur for Bakhtiari's benefit and which were paid entirely with Sonnen funds, includes many of the classic examples of how pathological white-collar criminals spend other people's money—vacations, Vegas, casinos, Louis Vuitton, Gucci, Saks Fifth Avenue.  He used some of the funds to pay for his family's mansion in Newport Beach.  This was not the crime of someone desperate for income for basic life expenses, but someone consumed by a desire for expensive material

1    items and a life beyond his already considerable legitimate means.

2          The victim impact in this case is also substantial.  As recounted Victim Impact Statement of P.S.:

3              I am personally devastated by the fact that I trusted Amir Bakhtiari and entrusted him

4              with the daily management of my Company and my employees.  I will never get over my
                regret that I made the mistake of hiring him, and compounded my first mistake by

5              trusting him.

6    VIS of P.S. at 7.  This comment captures one of the crucial aspects of this case—the impact on people of

7    the abuse of trust by someone close to them over such a long period of time.  Though the government

8    has been able to recover some of the funds from Bakhtiari, there is no way to restore a sense of

9    normalcy and trust to the owners of Sonnen Motorcars or the people Bakhtiari used as part of his

10    scheme.

11          **2.**      *History and Characteristics of Defendant*

12          Bakhtiari is a white-collar defendant for whom a series of high-paying jobs were not enough.  He

13    was trained as an aviation mechanic in Iran before immigrating to the United States.  PSR ¶ 58.  From

14    1992 to the termination of his employment at Sonnen in 2016, he worked for auto dealerships in the Bay

15    Area.  PSR ¶¶ 61–63.  He started as a sales representatives, earning approximately $75,000 per year,

16    before eventually working his way up in the 2000s to be a manager at Serramonte Nissan and earning

17    almost $240,000 per year.  PSR ¶¶ 61–62.  His total net worth (which will be substantially reduced by

18    forfeiture and restitution in this case) is over $4.89 million.  PSR ¶ 64.  He is a classic white-collar

19    criminal—an industry professional who took advantage of the trust others put in him.

20          **3.**      *A Guidelines Sentence is Appropriate*

21          The Guidelines account for many of the § 3553 factors discussed above—the loss amount, the

22    abuse of trust, his manipulation of others to participate, and the financial impact on the victims.  They do

23    not necessarily account for others, including the lengthy time period of the scheme, the pathological

24    nature of the day-to-day lies he told, and the non-financial harm he intentionally caused to others.  This

25    is not a case where the loss amount overstates a defendant's culpability, as the loss consists almost

26    entirely of gain, to Bakhtiari, from a real victim, taken with direct lies over a long time.

27          Conversely, there are no significant mitigating factors unaccounted for by the Guidelines in this

28    case.  Bakhtiari's affluence and good fortune to this point in his life are substantially greater than vast

majority of defendants sentenced by this Court.  The PSR mentions his mental health, his family, and immigration status as possible mitigating factors warranting a variance.  None is a basis for a variance here.

First, Bakhtiari's mental health conditions—described but unverified in the PSR as depression and insomnia, and possibly early onset dementia, PSR ¶ 56—seem to have appeared after he was charged and arrested in this case.  Bakhtiari went from being a powerful and wealthy man to being a man with no job, under indictment for his offenses.  It is difficult to verify this health condition, but the deterioration of white-collar defendants after arrest and charging for fear of custody is not unusual and does not warrant special treatment.

Second, to the extent Bakhtiari will be deported as a result of his crimes—and the government believes his offense in this case is potentially deportable but has no ability to predict the outcome of his immigration proceedings or any claims to prevent deportation that he might have—that is entirely his own fault and the result of his deliberate conduct over seven years.

Third, the government sympathizes with the small children of anyone who is sentenced to a lengthy prison sentence.  But as with many other defendants who appear before this Court, the collateral damage on Bakhtiari's family is entirely his fault.  He committed a massive fraud out of greed, knowing the impact that the likely eventual consequences of prison and deportation would have on his young children.  Moreover, unlike the many other defendants who leave behind destitute families when they are sentenced, Bakhtiari will go to prison leaving behind assets for his family.  The asset disposition agreement between the Bakhtiaris and the government, attached to the plea agreement, Dkt. 86-1, allows defendant's wife and children to keep a variety of assets in their names that were accumulated over the years and not funded with fraud proceeds, including but not limited to, half of the proceeds of the sale of their Newport Beach house, half of a Vanguard IRA valued at over $600,000, and other assets.

As a final note, this is a case in which general deterrence is extraordinarily important.  The only thing to prevent wealthy white-collar defendants with access to substantial amounts of other people's money from committing crimes is with significant prison sentences.  Any meaningful break for a person as well-off as this defendant will only further reinforce the problematic misperception that white-collar defendants do not receive significant prison sentences, and that white-collar crime pays for its

**SENTENCING MEMORANDUM**            7

1  perpetrators.

2    For these reasons, the government recommends a Guidelines sentence of 70 months of

3  imprisonment.

4    **E.    Financial Penalties**

5    Restitution is mandatory in this case under 18 U.S.C. § 3663A.  The government requests a wire

6  fraud restitution amount of the total loss to Sonnen Motorcars of $6,618,639, and a tax restitution

7  amount of $1,443,911 to the IRS.  The government does not request restitution to Sonnen Motorcars for

8  additional expenditures beyond the $6.6 million embezzled by the defendant.

9    The plea agreement calls for forfeiture of various items, and the government requests that the

10  Court order forfeiture for those items.  Additionally, the parties have agreed to an asset disposition

11  agreement to cover additional assets (as well as Bakhtiari's portion of his interest in the home, which

12  was included in the forfeiture component of the plea agreement but has been sold and settled separately

13  under the terms of the asset disposition agreement).

14    **CONCLUSION**

15    With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United

16  States respectfully requests that the Court impose a Guidelines sentence of 70 months of imprisonment,

17  three years of supervised release, restitution, forfeiture, and a $100 special assessment per count.

18

19  DATED: October 22, 2019                    Respectfully submitted,

20                               DAVID L. ANDERSON
                                 United States Attorney
21

22                               _____/s/_____

23                               BENJAMIN KINGSLEY
                                 Assistant United States Attorney
24

25

26

27

28